UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-CV-20573-GAYLES/TORRES

NILO VILLAMAR, on behalf of
himself and those similarly situated,

    *Plaintiff,*

v.

CARRIER COMPLIANCE SERVICES CORP.,
ROADTEX TRANSPORTATION CORP.,
UNIQUE FREIGHT BROKERS, INC.,
UNIGUE FREIGHT LINES, INC., and
DAVID PADRON,

    *Defendants.*

_____/

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S MOTION TO CONDITIONALLY CERTIFY COLLECTIVE
ACTION AND FACILITATE NOTICE TO POTENTIAL CLASS MEMBERS**

This matter is before the Court on Plaintiff's motion to conditionally certify this as a collective action and facilitate notice to potential class members. [D.E. 41]. Defendants filed a response [D.E. 48] to which Plaintiff replied [D.E. 51]. Accordingly, Plaintiff's motion is now ripe for disposition. Having reviewed the briefing, the relevant case law, and otherwise being fully advised in the premises, the Court recommends that Plaintiff's motion be **GRANTED in part** and **DENIED in part**.[1]

---

[1] On September 25, 2021, the Honorable Darrin P. Gayles referred Defendant's motion to dismiss to the undersigned Magistrate Judge for disposition. [D.E. 47].

1

## I. BACKGROUND

This is an action to collect unpaid overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. The operative complaint alleges that Nilo Villamar was employed by Defendants as a "dispatcher" at their office in Miami-Dade County. Villamar further alleges that Defendants, as his joint employer, failed to pay him the required time-and-one-half wage required for all work performed in excess of 40 hours per week – a violation of the FLSA.

Because Villamar alleges that Defendants jointly employed him, a brief review of who these Defendants are (and how they are allegedly related to one another) will help guide the Court's analysis. It must be noted at this juncture, however, that the record before the Court is very limited at this time. Nevertheless, it is indisputably clear that there are five defendants in this lawsuit – four companies and one individual – and so each will be discussed in turn.

Carrier Compliance Services Corp. ("CCSC") is a Florida company with its principal address at 11450 NW 122nd Street, Suite 300, Medley, Florida 33178.[2] It has a separate address in Hialeah, Florida, which is where its president and registered agent apparently reside. According to the operative complaint, CCSC provides trucking compliance services to other trucking companies throughout the United States. David Padron's role within CCSC is not clear on this record, but Villamar alleges that CCSC qualifies as one of his joint employers because, among

---

[2] Because this is an address shared by all Defendants, the Court will refer to this address as the "Medley Office."

other things, its operations are "unified" with the other Defendants and the work performed by Villamar benefitted *all* of the Defendants.

RoadTex Transportation Corp. ("RoadTex") is a New Jersey company that is registered to conduct business in Florida. Although it has locations across the United States, its president – Bruno Ciacciarelli – appears to run the company from its headquarters in Somerset, New Jersey. In Florida, RoadTex occupies space in the Medley Office, which RoadTex officially lists as its principal address as well as the address where one can find its registered agent: Padron.[3] According to Ciacciarelli, RoadTex is a "broker" in the trucking industry. As such, RoadTex serves as an intermediary between those who wish to ship things via truck (i.e., "customers") and those who transport things via truck (i.e., "carriers").

Unique Freight Brokers, Inc. ("UFB") is a Florida company led by Padron that appears to reside entirely at the Medley Office. According to Padron, UFB is a "carrier" in the trucking industry who works exclusively for RoadTex.[4] Neither party disputes that UFB was Villamar's employer and, indeed, Villamar's pay stubs indicate that his compensation came from UFB.

Unique Freight Lines, Inc. ("UFL") is another Florida company led by Padron that appears to reside entirely at the Medley Office. Villamar specifically alleges that

---

[3]     Villamar further alleges that Padron is one of RoadTex's owners.

[4]     It is curious that Padron defines UFB as a "carrier" rather than a "broker" given that the word "brokers" is in his company's name, but an iPhone need not be made from a piece of fruit.

3

UFL is part of a "unified operation" with the other Defendants and, as such, UFL employees are interchangeably shared with CCSC, RoadTex, and UFB.

Padron is alleged to be one of the owners of UFB, UFL, and RoadTex; he is also alleged to be the person responsible for running the day-to-day operations of the businesses at the Medley Office. As such, he determined the scheduling of employees, the rates of pay associated with each employee's work, the hiring and firing of employees, the scope of work assigned to employees, and he otherwise exercised significant control over Villamar's employment.

Having sued these Defendants to collect unpaid overtime wages, Villamar now seeks to conditionally certify a class of "similarly situated" employees for the purpose of (1) proceeding as a collective action under the FLSA and (2) providing Court-authorized notice to prospective class members. As such, Villamar appears to define his class as:

> All current and former hourly paid dispatchers, customer service representatives, and/or other employees who performed the same or similar job duties who were not paid full and proper overtime wages for all hours worked in excess of forty (40) hours per workweek at any time within the last three (3) years.[5]

In support of his motion, Villamar filed a sworn declaration and also supplied the sworn declarations of three opt-in plaintiffs – Bryan Jimenez, Iran Velazco, and

---

[5]   The Court notes that Villamar's proposed definition is not consistent throughout the record. The inclusion of "customer service representatives" appears to have been added after Villamar filed the operative complaint. And although both the operative complaint and the instant motion clearly seek to certify a nationwide class, Villamar's declaration made in support of his motion suggests that his class should be limited to employees within Florida.

4

Roberto Frabotta – who worked at the Medley Office around the same time as Villamar. In opposition, Defendants submitted two sworn declarations: one from RoadTex and another from UFB.

## *II.  APPLICABLE PRINCIPLES AND LAW*

Plaintiff seeks relief under 29 U.S.C. § 216(b), which provides that employees affected by a defendant-employer's failure to abide by the FLSA's requirements cannot be bound to the outcome of an FLSA case unless they have filed their written consent to be joined with the Court. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). Section 216(b) outlines an "opt-in" class action that expressly requires a putative plaintiff to affirmatively opt into the action in order to be considered a class member bound by its outcome. *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001). For this reason, it is important that similarly situated, putative plaintiffs are made aware of the pending litigation. *Id*.

The Eleventh Circuit utilizes a two-tiered approach to certification of an opt-in collective action. *Hipp*, 252 F.3d at 1218-19. During the first tier, also known as the "notice" or "conditional certification" stage, the Court makes an initial determination regarding whether notice to "similarly situated" putative plaintiffs should issue, and this determination is based solely on the pleadings and affidavits filed in the case. *See id*; *see also Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996) (noting that "similarly situated" does not mean identically situated). At

5

the conditional certification stage, Plaintiff has the burden of showing that there is a reasonable basis for allowing the case to proceed as a collective action; thus, Plaintiff must satisfy the Court that there are other similarly situated employees who would opt-in to the case if given notice. *See Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). Plaintiff's burden at this stage is not heavy, but it is also "not invisible." *See, e.g., Zuliani v. Santa Ana, LLC*, Case No. 17-cv-62080, 2018 WL 1894723, at *2 (S.D. Fla. Mar. 14, 2018).

Court-authorized notice in a class action context helps to prevent misleading communications and ensures that the notice is timely, accurate, and informative. *See, e.g., Sealy v. Keiser School, Inc.*, 2011 WL 7641238, at *4 (S.D. Fla. Nov. 8, 2011) (quoting *Hoffman-LaRouche v. Sperling*, 492 U.S. 165, 171-72 (1989)) (quotations omitted). The notice given to putative plaintiffs should fairly advise its recipients of both parties' positions to allow them to make their own judgments. *See id*.

### III.   ANALYSIS

As discussed below, the Court concludes that this case should be conditionally certified as an FLSA collective action. Accordingly, notice should issue. But Defendants dispute both the substance of the notice and the universe of potential recipients. Therefore, the Court will address the parties' arguments at the appropriate intervals.

####   A.   *The definition of the conditionally certified class of employees.*

Given RoadTex's national presence, Villamar argues in favor of a nationwide class because of the potential that similarly situated employees exist at other

RoadTex locations. Defendants believe no class should be certified whatsoever because none of their current or former employees are similarly situated to Villamar. The correct answer lies somewhere in the middle.

The Court recognizes at the outset that the record indicates the existence of similarly situated employees at Defendants' Medley Office. In addition to Villamar, three other employees from the Medley Office have opted into this case and all of these employees recite very similar experiences. Moreover, it is the shared belief of Villamar and the opt-in plaintiffs that there are other current and/or former employees at the Medley Office who would join this action if given proper notice. This is sufficient evidence to conditionally certify a collective action for Defendants' Medley Office location. *See, e.g., Reyes v. Carnival Corp.*, Case No. 04-cv-21861, 2005 WL 4891058, at *6 (S.D. Fla. May 25, 2005) (finding that the affidavit of the named plaintiff in conjunction with the affidavits from two opt-in plaintiffs was sufficient to conditionally certify an FLSA collective action).

But the record does not support the same finding with respect to any other offices or locations that Defendants may operate. At bottom, Villamar and the opt-in Plaintiffs can attest only to their suspicion that more than 250 employees across the country are similarly situated to them.

In *Pendlebury*, for example, the court conditionally certified a nationwide class of employees, but it did so when the two named plaintiffs were store managers at different locations and the court was presented affidavits from other store managers who worked at locations across the United States. *Pendlebury v. Starbucks Coffee*

7

*Co.*, Case No. 04-cv-80521, 2005 WL 84500, at *3-4 (S.D. Fla. Jan. 3, 2005). By contrast, in *Wynder*, the court declined to conditionally certify a class of employees beyond the office of the named plaintiff when there was no evidence in the record that there existed similarly situated employees at the defendant's other offices. *Wynder v. Applied Card Systems, Inc.*, Case No. 09-cv-80004, 2009 WL 3255585, at *3 (S.D. Fla. Oct. 7, 2009) ("Simply put, Wynder has failed to establish that he is similarly situated to all current and former customer assistance supervisors employed by Defendant at any location. Wynder has failed to offer any evidence that the labor practices at issue extended beyond the Boca Raton, Florida location.").

Following the guidance of *Pendlebury* and *Wynder*, the Court finds that the universe of employees who may be similarly situated to Villamar is limited to those who worked in the same office as Villamar – the Medley Office. As such, the Court recommends that the following class be conditionally certified as an FLSA collective action:

> All current and former hourly paid dispatchers, customer service representatives, and/or other employees who performed the same or similar job duties who were not paid full and proper overtime wages for all hours worked in excess of forty (40) hours per workweek at any time within the last three (3) years and who worked at the Defendants' Medley Office, which is located at 11450 NW 122nd Street, Suite 300, Medley, Florida 33178.

To facilitate the requisite notice to this class, the Court further recommends that Defendants be ordered to provide Villamar with an electronic and importable spreadsheet identifying every person employed by any of the Defendants from February 2018 to the present who may fall within the scope of the class defined above.

8

This spreadsheet must include each person's full name, job title, dates of employment, mailing addresses, and email addresses.

### B. *The scope, form, and substance of the notice.*

Having accepted the possibility that the Court may authorize notice in this case, Defendants suggest several limitations regarding the scope, form, and substance of the notice (as well as the associated opt-in form) that will be delivered to putative class members. Having reviewed Defendants' objections, the Court finds that Defendants have correctly highlighted a few deficiencies in the notice and opt-in forms proposed by Villamar. Accordingly, Villamar's request to distribute its proposed notice and opt-in forms should be **DENIED** and he should be given leave to file amended proposed notice and opt-in forms that are consistent with the discussion below.

#### 1. *The method of delivering notice.*

Defendants would prefer that notice be delivered exclusively via paper mail, but the Court finds that this is an unnecessary limitation. Defendants argue that their employees provided Defendants with their email addresses in confidence and so it would be an invasion of their privacy to turn that information over to Villamar for notice purposes. The nonsensicality of this argument is captured by Defendants' willingness to reveal these employees' home addresses instead.

Villamar should be authorized to deliver this notice via paper mail, email, and by posting the notice at a conspicuous location within the Defendant's Medley Office because the Court finds that the combination of those methods is reasonably likely to

result in the effective delivery of notice to the putative class. And although Villamar is not required to use a third-party administrator to conduct this notice process, he should be authorized to do so. Finally, it should be permissible to sign the opt-in forms electronically or with ink.

### 2. *The duration of the notice period.*

Villamar initially requested a 90-day notice period; however, he has since agreed with Defendants to reduce that period to 45 days. Accordingly, the Court recommends a 45-day period for putative plaintiffs to opt-in to this case, said period to run from the date on which the notice is distributed.

### 3. *The inclusion of defense counsel on the notice.*

Defendants argue that their counsel's contact information should be included in the notice. The Court is very skeptical of this request. Rule 4-4.3 of the Rules Regulating the Florida Bar provides that:

> [in] dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding. The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel.

Defendants argue that their information should be included in the interests of providing "full disclosure" to the recipients of the notice, but the Court is wary of the ethical dilemma that may flow from inclusion of defense counsel's contact information. As such, the Court declines to require Villamar to include defense counsel's contact information in the notice.

Defendants also object to the number of times that Plaintiff counsel's contact information is listed in the notice; accordingly, they would like reduce this number from three to one. The Court finds no issue with the number of times that Plaintiff counsel's contact information is listed in the notice and, therefore, declines to require Villamar to reduce this number.

### *4.  Independent legal counsel and opt-in obligations.*

The Court agrees with Defendants that the notice should clearly advise the recipient of their right to obtain independent legal counsel. As such, this information should be included in the notice. Additionally, the Court agrees with Defendants that the notice should include information relating to an opt-in plaintiff's potential obligations, such as the possibility that Defendants may seek to recover their costs in this litigation if they prevail and the possibility that an opt-in plaintiff may have to appear in person for trial in Miami.

### *5.  The inclusion of the case style in the notice.*

Defendants argue that it is improper to include the case caption in the notice because it increases the likelihood that a recipient may mistakenly belief that the Court approves of this action and is not impartial. The Court disagrees. Including the case style serves to communicate important information about the case and helps inform the recipient about who authorized the notice; it does not suggest impartiality. Put differently, inclusion of the case style communicates that the Court approves of the notice, not the merits of the litigation. Accordingly, the Court declines to require Villamar to remove the case style from his proposed notice.

## IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Plaintiff's motion be **GRANTED in part** and **DENIED in part**:

A. The case should be conditionally certified as an FLSA collective action in accordance with this report and recommendation;

B. Defendants shall produce an electronic and importable spreadsheet that identifies the putative class members by their full names, job titles, dates of employment, mailing addresses, and email addresses;

C. Plaintiff may not distribute his proposed notice and opt-in forms as they are currently written; however, he should be given leave to file amended proposed notice and opt-in forms that are consistent with this report and recommendation; and

D. Once approved by the Court, Plaintiff may distribute the notice and opt-in forms in the manner specified by this report and recommendation.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g.,*

*Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 31st day of March, 2022.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge